UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KHECHUMYAN SMBAT,<br><br>Petitioner,<br><br>v.<br><br>ICE FIELD OFFICE DIRECTOR and BRUCE SCOTT,<br><br>Respondents. | CASE NO. 2:26-cv-03338-JNW<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |

## 1. INTRODUCTION

This matter comes before the Court on pro se Petitioner Smbat Khechumyan's petition for writ of habeas corpus.[1] Dkt. No. 1. Having reviewed the petition, the return, Dkt. No. 6, the traverse, Dkt. No. 13, and all other supporting material, the Court DENIES the petition without prejudice for the reasons below.

[1] Although the caption lists him as "Khechumyan Smbat," Khechumyan is his family name, so the Court refers to him as Khechumyan. *See* Dkt. Nos. 9 ¶ 2; 13 at 1, 13.

## 2. BACKGROUND

Khechumyan is a native and citizen of Armenia who tried to enter the United States in March 2015 using documentation not legally issued to him. Dkt. Nos. 1-1 ¶ 3; 9 ¶ 3. United States Department of Homeland Security (DHS) officers arrested Khechumyan and issued him a Notice to Appear (NTA) charging him as inadmissible under Immigration and Nationality Act (INA) § 212(a)(7)(A)(i)(I) on May 20, 2015. Dkt. No. 9 ¶ 4. Nine days later, DHS released Khechumyan on parole under 8 U.S.C. § 1182(d)(5). *Id.*

On September 30, 2020, an Immigration Judge (IJ) denied Khechumyan's application for asylum, withholding of removal, and protection under the Convention Against Torture and ordered him removed to Armenia. Dkt. No. 8 at 25. His appeal of that decision to the Board of Immigration Appeals (BIA) remains pending. Dkt. Nos. 9 ¶ 6; 1-1 ¶ 4. The BIA rejected Khechumyan's attempt to withdraw his appeal because his attorney did not submit the withdrawal. Dkt. No. 9 ¶ 10. Khechumyan also filed a motion to reopen with the BIA on October 23, 2024, which remains pending. *Id.* ¶ 9.

On August 19, 2022, Khechumyan pled guilty to Conspiracy to Commit Bank Fraud and Aggravated Identity Theft and was sentenced to 48 months in prison and to pay $950,815.00 in restitution. *Id.* ¶ 7; Dkt. No. 1-1 ¶ 5. Immigration and Customs Enforcement (ICE) re-detained Khechumyan directly from the custody of the Bureau of Prisons on October 10, 2024, and transferred him to the Northwest ICE Processing Center ("NWIPC") the next day. Dkt. Nos. 9 ¶ 8; 1-1 ¶ 6.

On June 26, 2026, the Honorable John H. Chun granted Khechumyan's first petition for writ of habeas corpus finding that his detention had become unconstitutionally prolonged. *Smbat v. Ice Field Off. Dir.*, No. 2:26-CV-00818-JHC, 2026 WL 1842663, at *5 (W.D. Wash. June 26, 2026). Judge Chun ordered a bond hearing where the Government bears the burden of proving by clear and convincing evidence that Khechumyan is a flight risk or danger to the community under *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011). *Id.*

Khechumyan had that bond hearing on July 7, 2026, and the IJ denied bond. Dkt. Nos. 8 at 12, 30–31; 1-1 ¶ 8. The Government provides an audio recording and transcript of the hearing. Dkt. Nos. 10, 11. Khechumyan filed a motion to enforce Judge Chun's habeas order in his first habeas case. Dkt. Nos. 1 at 30–31; 1-1 ¶ 9. Judge Chun denied the motion, finding that "by Petitioner's own admission, the IJ expressly stated the *Singh* standard and seemingly complied with that standard," and that Khechumyan should bring any new challenge to his detention in a separate habeas petition. Dkt. No. 1 at 31. Khechumyan filed a new habeas petition in this Court on September 15, 2026. *Id.* at 1.

## 3. LEGAL STANDARD

Federal courts have authority to grant writs of habeas corpus to any person held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Habeas corpus "entitles [a] prisoner to a meaningful opportunity to demonstrate that he is being held pursuant to 'the erroneous application or interpretation' of relevant law." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008) (quoting *INS v. St. Cyr*, 533 U.S. 289, 302 (2001)). "The essence of

habeas corpus is an attack by a person in custody upon the legality of that custody," and thus to warrant relief, a petitioner must demonstrate that his detention is unlawful. *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973); *see Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004). A district court's habeas jurisdiction extends to challenges to immigration-related detention. *Demore v. Kim*, 538 U.S. 510, 517 (2003); *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## 4. DISCUSSION

### 4.1 The Court has jurisdiction to review Khechumyan's bond decision.

Federal courts have jurisdiction to review "bond hearing determinations for constitutional claims and legal error." *Singh*, 638 F.3d at 1200; *see Kharis v. Sessions*, No. 18-cv-04800-JST, 2018 WL 5809432, at *4 (N.D. Cal. Nov. 6, 2018) (collecting cases). "The application of a statutory legal standard . . . to an established set of facts is a quintessential mixed question of law and fact," which is reviewable by courts. *Wilkinson v. Garland*, 601 U.S. 209, 212 (2024). A bond denial due to community danger or flight risk is such a mixed question, subject to judicial review by federal courts under an abuse of discretion standard. *See Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024).

### 4.2 Khechumyan's bond hearing complied with *Singh* and due process.

Habeas courts review an IJ's bond decision for abuse of discretion. *Martinez*, 124 F.4th at 784–85. The Court may ask whether the IJ applied the correct legal standard; it may not reweigh the evidence. *Id.* at 785 (citing *Konou v. Holder*, 750 F.3d 1120, 1127 (9th Cir. 2014)).

In making bond determinations, IJs consider the *Guerra* factors:

> (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen's] length of residence in the United States; (3) the [noncitizen's] family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen's] employment history; (5) the [noncitizen's] record of appearance in court; (6) the [noncitizen's] criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen's] history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen's] manner of entry to the United States.

*In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006).

Khechumyan argues the bond hearing conducted on July 7, 2026, did not provide the individualized determination that *Singh* and due process require. Dkt. No. 1-1 at 5 (citing 638 F.3d at 1203–04, 1208). He focuses on the IJ's two-page order checking the box that the Government established Khechumyan "is a Danger to Community and Flight Risk by clear and convincing evidence . . . [and] that no amount of bond or condition of parole will adequately mitigate the danger or the flight risk" but providing no reasoning. Dkt. No. 8 at 30. Khechumyan argues this "checked box" order, without any findings of fact or discussion of the evidence, violated *Singh*. Dkt. No. 1-1 at 5.

"While a paper record such as this does not always tell the full story," *Quintanilla v. Hernandez*, No. 2:26-CV-01629-TMC, 2026 WL 1827541, at *5 (W.D. Wash. June 25, 2026), the transcript and recording of the bond hearing the Government provided fill in the gap. Khechumyan argues the Government concedes that "poor audio quality makes it difficult to discern precisely what transpired" at

the hearing. Dkt. No. 13 at 5 (citation modified). But the transcript the Government later filed shows what happened.[2] *See* Dkt. No. 11.

On this record, the Court cannot find the IJ abused his discretion in denying bond. As Khechumyan concedes, the IJ applied the correct legal standard by requiring the Government to prove its case by clear and convincing evidence. Dkt. No. 1-1 ¶ 8; *see also* Dkt. No. 11 at 2:8–13 (announcing the Government "bears the burden to show that you're either a danger or a flight risk, by clear and convincing evidence."), 5:4–5 (reiterating that the Government "has the burden."), 11:4–9 (finding the Government "met its burden to show, by clear and convincing evidence, that respondent's both a danger to the community in terms of property in the community, and he's a flight risk, by clear and convincing evidence.").

The IJ also gave Khechumyan multiple opportunities to provide any evidence for the IJ to consider. Dkt. No. 11 at 3:4–6, 21–22, 9:14–16. Khechumyan responded with the length of time he has been in custody and the status of his pending asylum appeal, as well as his desire to return to his family. *Id.* at 3:13–20, 23–4:10. He also acknowledged his criminal history and that he agreed to his deportation to Armenia, but Khechumyan asked that the IJ allow him to stay with his family until the Government deports him. *Id.* at 9:17–10:2. Khechumyan now argues in his traverse that his lack of counsel prevented him from filing supporting evidence at

---

[2] Khechumyan asks the Court to order Respondents to serve him with the transcript and to let him supplement his traverse before the Court rules. Dkt. No. 13 at 11–13. The Court denies the request. Khechumyan attended the hearing and testified through an interpreter, and his filings describe the hearing from his own account. Dkt. Nos. 1-1 ¶ 8; 13 at 8. The parts of the transcript the Court relies on record those same exchanges.

the bond hearing. Dkt. No. 13 at 8. While the Court recognizes the real challenges of litigating without an attorney, it cannot say the IJ abused his discretion by failing to consider evidence that Khechumyan did not provide.

The record demonstrates that the IJ considered multiple *Guerra* factors, such as Khechumyan's address in the United States, his family ties, his employment history, his attempted entry to the United States using documents not legally issued to him, and his undisputed criminal record of two serious felony convictions from 2022. Dkt. No. 11 at 7–10. Khechumyan concedes that "the IJ asked about his family ties, employment, tax payment, and property," but argues that neither the written order nor the recording suggests "the IJ weighed those answers[.]" Dkt. No. 13 at 8. He points to his years on parole, his court appearances, and his effort to withdraw his own appeal, *id.* at 7–8, but an IJ need not discuss every piece of evidence, and Khechumyan does not identify "highly probative or potentially dispositive" evidence that the IJ failed to consider or that would outweigh his criminal convictions. *See Lei v. Bostock*, No. C26-2424-KKE, 2026 WL 2529521, at *3 (W.D. Wash. Aug. 27, 2026).

And while Khechumyan attempts to reduce his convictions to "non-violent financial offenses," Dkt. No. 13 at 7, serious financial crimes can support a finding of dangerousness. *See Anyanwu v. Bondi*, No. C25-995-JLR-MLP, 2025 WL 3466910, at *5 (W.D. Wash. Oct. 6, 2025), *report and recommendation adopted*, No. C25-0995JLR, 2025 WL 3187485 (W.D. Wash. Nov. 14, 2025) ("considerations of dangerousness include danger to either persons *or* property[.]") (citation modified). Khechumyan's record isn't the kind *Singh* cautioned about—minor offenses, or old

convictions followed by years of law-abiding life. 638 F.3d at 1206. His convictions are recent, he was sentenced to four years in prison, and he owes more than $950,000 in restitution. Because the record supports the danger finding, the Court need not decide whether it also supports the flight-risk finding. *See Smbat*, 2026 WL 1842663, at *5 (Government must prove flight risk *or* danger); *Martinez*, 124 F.4th at 781, 786 (affirming bond denial based on dangerousness).

Like the IJ in *Martinez*, the IJ here applied the correct legal standard and considered the evidence before denying Khechumyan bond. 124 F.4th at 780. The Court may not reweigh that evidence here. *Id.* at 784–85. None of the other cases Khechumyan cites compels a different result. In *Soto Gimenez v. Hernandez*, the court found the IJ's "checkbox orders" were an abuse of discretion where the Government provided no transcript or recording of the hearing. No. 2:26-CV-00966-GJL, 2026 WL 1156075, at *7 (W.D. Wash. Apr. 29, 2026). In *Smith v. Hernandez*, the petitioner's criminal record primarily consisted of offenses committed at least sixteen years earlier. No. 2:26-CV-001861-JNW, 2026 WL 2085853, at *4–5 (W.D. Wash. July 20, 2026). And the only record of the IJ's decision "ma[de] no mention of" his positive equities, including his entry into the United States through a "Child of a U.S. Citizen Visa" when he was seventeen, his five U.S. citizen children, the letters of support he submitted to the IJ, his military service, and pending application for naturalization. *Id.* at *1.

In the alternative, Khechumyan argues that his continued detention remains unreasonably prolonged in violation of due process. Dkt. No. 1-1 at 5–6. He urges the Court to apply the six factors adopted in *Banda v. McAleenan*, 385 F. Supp. 3d

1099, 1106 (W.D. Wash. 2019). Dkt. No. 13 at 9. But *Banda* applies to noncitizens mandatorily detained under 8 U.S.C. § 1226(b). 385 F. Supp. at 1106. Here, the parties agree Khechumyan is mandatorily detained under 8 U.S.C. § 1226(c). Dkt. Nos. 6 at 2; 13 at 9. Courts in this District generally apply the multi-factor test set forth in *Martinez v. Clark* to decide whether prolonged Section 1226(c) detention requires a bond hearing. No. C18-1669-RAJ-MAT, 2019 WL 5968089, at *7 (W.D. Wash. May 23, 2019), *report and recommendation adopted*, No. 18-CV-01669-RAJ, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019) (collecting cases). But when petitioners like Khechumyan have already received a bond hearing, courts in this District have applied *Mathews v. Eldridge* to determine whether additional procedures are constitutionally required. *K.S. v. Blanche et al.*, No. 2:26-CV-02378-GJL, 2026 WL 3132150, at *4, *4 n.3 (W.D. Wash. Oct. 20, 2026) (citing 424 U.S. 319 (1976)). Under *Mathews*, courts weigh the private interest at stake, the risk of erroneous deprivation through existing procedures, and the Government's interest. 424 U.S. at 334–35.

Khechumyan has a private interest in his liberty as "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. While this factor weighs in Khechumyan's favor, courts in this District have found that "the individual interest is not as strong as it would be for an individual without any showing of material changed circumstance," when the Government shows serious criminal activity is involved. *Quinonez Torres v.*

*Hermosillo*, No. 2:26-CV-00076-TLF, 2026 WL 547591, at *9 (W.D. Wash. Feb. 23, 2026).

The second and third factors weigh against Khechumyan. He has already received an individualized bond hearing that the Court determined was constitutionally sufficient as discussed above. He has been detained for less than six months following that bond hearing. Khechumyan identifies no other "material change in circumstances suggesting that the prior custody determination is no longer reliable . . . Nor does he identify any recent government-caused delay or other material development suggesting that his continued detention without an additional hearing has become constitutionally unreasonable." *K.S.*, 2026 WL 3132150, at *4. And "[t]he government has a significant interest in enforcing the immigration laws and effectuating removal, particularly where a noncitizen has already received an individualized custody determination." *Id.* at *5 (citing *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208–09 (9th Cir. 2022)). Accordingly, due process does not require a second bond hearing on this record.

Because the Court denies Khechumyan's habeas petition on substantive grounds, it does not reach the Government's argument that Khechumyan must first exhaust his administrative remedies.

## 5. CONCLUSION

In sum, the Court DENIES Khechumyan's second petition for writ of habeas corpus without prejudice. Dkt. No. 1.

Dated this 13th day of November, 2026.

Jamal N. Whitehead
United States District Judge